UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| JEREMIAH McCALL,<br><br>　　Plaintiff,<br><br>　　v.<br><br>NORTH BRANCH CORRECTIONAL INSTITUTION,<br>DEAN ROUNDS, JR. and<br>JEREMY WOLFORD,<br><br>　　Defendants. | Civil Action No. TDC-22-0357 |

MEMORANDUM OPINION

Self-represented Plaintiff Jeremiah McCall, who is currently incarcerated at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging constitutional violations arising from the alleged use of excessive force against him at NBCI. The presently operative Amended Complaint, which the Court construes as including the allegations in the original Complaint, ECF Nos. 1, 6, names as Defendants NBCI and Correctional Officers Dean Rounds, Jr. and Jeremy Wolford. Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 19. McCall, with the assistance of Prisoner Rights Information System of Maryland, Inc. ("PRISM"), opposes the Motion. McCall has also filed three Motions for the Appointment of Counsel. ECF Nos. 10, 13, 22. Having reviewed the briefs and submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion will be GRANTED IN PART and DENIED IN PART, and McCall's Third Motion for Appointment of Counsel will be GRANTED.

## BACKGROUND

### I. The Complaint

In the Amended Complaint, McCall alleges that on December 21, 2020 after 5:00 p.m., Correctional Officers Rounds and Wolford assaulted him inside the medical room inside Housing Unit 2 at NBCI. The assault consisted of repeated punches to the head, face, and body. According to McCall, at that time, he had not assaulted any correctional staff, and he was handcuffed with his hands behind his back. As a result of the assault, McCall had to be taken to a hospital for treatment. He sustained multiple bruises and knots in his face and the back of his head, swelling of his left eye and a deep laceration to the corner of his left eye that required stitches, and a fractured nose as confirmed by a CT Scan at the hospital. As relief, McCall seeks monetary damages, a transfer to another prison, replacement of his personal property, and psychological counseling.

### II. Submitted Evidence

With their memorandum in support of the Motion, Defendants have submitted multiple exhibits, including a report on a use-of-force ("UOF") investigation ("the UOF Report") prepared by Lt. Brandon Caple, which includes written accounts of the incident from the correctional officers involved, and an affidavit by Detective Sergeant Aaron Wilson of the Maryland Department of Public Safety and Correctional Services ("DPSCS"), Intelligence and Investigative Division ("IID"), who conducted a subsequent IID investigation into the incident. With his memorandum in opposition to the Motion, McCall included the report on the IID investigation ("the IID Report"), as well as a declaration in which he asserted that he needs discovery in order to respond properly to the Motion. These submitted materials describe the following additional facts.

On December 21, 2020 at approximately 5:00 p.m., as evening medications were being distributed, McCall pulled on the security slot in his cell door to prevent it from opening and was yelling and screaming as part of some kind of protest. In response, Sergeant Anthony Koelker and Correctional Officers ("COs") David Spence, Christopher Vinci, and Roman Yoder, as well as other correctional officers, reported to the area. According to Koelker, after a "de-escalation technique" failed to calm McCall down, he called for McCall's cell door to be opened so that McCall could be removed and secured in a strip cage for a "cool down period." UOF Report at 3, Mot. Dismiss Ex. A, ECF No. 19-3. Koelker grabbed McCall's hand and removed it from the security slot and then attempted to handcuff McCall. McCall pulled away and retreated to the back of the cell, which caused Koelker and other correctional officers to enter the cell, take McCall to the floor, and handcuff him as he was resisting. Once he was restrained, McCall was pulled to his feet and escorted out of the cell by Vinci and Spence. According to Spence, McCall continued to resist and would not walk on his own, so at some point the correctional officers put him on the floor. Vinci and Spence were then joined by COs Rounds and Wolford, and all four lifted McCall off of the floor and carried him to the Housing Unit 2 medical room ("the Medical Room"). According to the written accounts of Rounds and Wolford included in the UOF Report, McCall continued to actively resist after he was brought into the Medical Room. Nurse Britteny Riley entered the Medical Room and offered to evaluate McCall, but he refused treatment.

Rounds and Wolford then escorted McCall to the "Housing Unit #2 Strip Cage" where he was strip searched. *Id.* at 4. No contraband was recovered during the search, but McCall was observed to have "notable injuries" including "some swelling and a small laceration on the corner of his left eye." *Id.* After McCall was moved to another housing unit and was waiting to be

3

assigned to a cell, the laceration to his left eye began bleeding. After both a nurse and a doctor examined McCall, he was sent to a hospital for treatment.

In conducting the IID investigation, Wilson reviewed the available surveillance video footage. Although the surveillance video confirmed how the incident at the entrance to McCall's cell began, there was no surveillance video that showed what happened inside the cell after the correctional officers entered. Wilson observed that, contrary to the accounts provided in the UOF Report, McCall was wearing a "spit hood" when he was escorted out of his cell with his hands restrained behind his back. IID Report at 12, Opp'n Mot. Dismiss Ex. A, ECF No. 24-3. The surveillance video confirmed that after McCall continued to resist, he was put down on the floor and then carried face down by four correctional officers to the Medical Room. Notably, in watching the surveillance video, Wilson saw "no clear sign of injury" to McCall and noted that there was no sign of blood dripping onto the floor, which would have been expected if McCall's eye was cut before or during his transport in a face-down position to the Medical Room. *Id.* at 14. Wilson observed that at the entrance to the Medical Room, one of the officers appeared to lose his grip, and the two officers in front appeared to be lower to the ground than before.

McCall was moved into the Medical Room at 5:08 p.m. There were no video cameras in the Medical Room, so Wilson could not make any observations about what happened while McCall was inside. *Id.* at 13. All that could be seen was several correctional officers and two nurses in the hallway looking into the Medical Room, and certain officers entering and exiting the Medical Room. The surveillance video showed that at 5:16 p.m., McCall was walked out of the Medical Room, and that at that time he was handcuffed and shackled, and he had a notable red spot on the left side of his face, near his forehead.

4

Based on his review of the surveillance video, Wilson concluded that while it confirmed that McCall was acting in a defiant and aggressive manner from the time he was in his cell until he had to be picked up by the four correctional officers, "the eye injury occurred between [McCall's] entry to the Medical Room and while inside, not in his cell." *Id.* at 14. He also determined, however, that it was possible that the injury occurred just outside the Medical Room, where it appeared that one of the officers lost his grip and that McCall may have dropped onto the floor.

As part of the IID investigation, Wilson interviewed Nurse Riley, who stated that when she entered the room, McCall was "trying to kick at her and refusing to let her treat him." *Id.* She could not remember if McCall had an eye injury before he went into the Medical Room and stated that she did not see anyone assault McCall.

Wilson also interviewed Wolford, who denied striking McCall. After watching the surveillance video, Wolford asserted that he lost his grip on McCall as they were entering the medical room and stated that he then saw blood on his gloves and on the table where McCall was placed. Wolford further claimed that McCall remained combative while in the Medical Room as officers tried to hold him down on the table so that medical staff could examine him. Likewise, in an interview for the IID Report, Rounds denied assaulting McCall and stated that McCall was thrashing around while in the Medical Room and would not let the nurse examine him. He asserted that he did not know how McCall was injured but recalled seeing blood on the floor and hearing Wolford state that he had blood on his hands.

When interviewed by Wilson, Vinci also denied assaulting McCall and asserted that McCall remained combative once he was inside the Medical Room and thrashed around. He stated that he heard Wolford say that he had blood on his gloves when they were in the Medical Room.

Wilson noted that the details provided to him by these correctional officers about what happened in the Medical Room were not included in their reports submitted for the UOF investigation. Nevertheless, Wilson concluded that McCall was injured when Wolford apparently lost his grip on McCall as he was carried into the Medical Room and stated that he found no evidence that McCall was held down and assaulted by Rounds and Wolford in the Medical Room, as McCall claimed.

## DISCUSSION

In their Motion, Defendants assert that the claims against NBCI should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because NBCI is not a person subject to suit under 42 U.S.C. § 1983 and is entitled to immunity under the Eleventh Amendment to the United States Constitution, and that the claims against Rounds and Wolford should be dismissed because they fail to state a plausible claim for relief. Alternatively, Defendants seek summary judgment under Rule 56 on the grounds that the record evidence establishes that the force used did not violate the Eighth Amendment and that they are entitled to qualified immunity.

### I. Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed

liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC,* 959 F.3d 605, 618 (4th Cir. 2020).

Although Defendants have submitted exhibits with their Motion, when deciding a motion to dismiss under Rule 12(b)(6), a court typically considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244–45 (4th Cir. 2002). McCall has submitted a Rule 56(d) affidavit requesting discovery prior to resolution of the Motion.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322

(1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II. NBCI

McCall's claim against NBCI fails because it is barred by Eleventh Amendment immunity. Under the Eleventh Amendment, absent consent, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12–201(a) (LexisNexis 2021), it has not waived its immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst*, 465 U.S. at 99. Thus McCall's claims against NBCI, a state agency, are barred by the Eleventh Amendment and will be dismissed.

### III.   Excessive Force

Defendants argue for dismissal or summary judgment on the claims against Rounds and Wolford on the grounds that neither the allegations nor the submitted evidence establish that they used excessive force against McCall in violation of his constitutional rights. Because McCall is an inmate alleging excessive force occurring in a prison, his § 1983 claim arises under the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must establish both that (1) the injury or deprivation inflicted was objectively serious enough to constitute a violation; and (2) the prison official subjectively "acted with a sufficiently culpable state of mind." *Williams*, 77 F.3d at 761.

On the objective element, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). However, an Eighth Amendment violation can occur even if a correctional officer's action did not cause serious injury. *Id.* at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

On the subjective element, an inmate must show that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" and thus "inflicted unnecessary and wanton pain and suffering," rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In assessing this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat;" and "(4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321).

Here, McCall has alleged in the Amended Complaint that on December 21, 2020, he was subjected to a malicious assault by Rounds and Wolford while he was handcuffed, which resulted in multiple facial bruises, swelling of his left eye, a laceration requiring stitches to the corner of his eye, and a fractured nose. Particularly where the allegations must be viewed in the light most favorable to McCall, they are sufficient to state a claim and to preclude dismissal pursuant to Rule 12(b)(6).

As for whether the evidence submitted by Defendants warrants summary judgment, McCall has submitted a declaration under Rule 56(d) in which he asserts that he needs discovery in order to respond completely to the Motion for Summary Judgment. Specifically, McCall states that he needs to depose Rounds and Wolford for multiple purposes, including to discover the reasons for their actions, whether their actions complied with standard protocols, and what caused the injuries to McCall. McCall also asserts that he needs to be able to depose other witnesses on whether McCall continued to resist the officers, as Defendants claim, and on what actions Rounds and Wolford actually took against him. Because McCall has not yet had the opportunity to engage

in such discovery that could reveal information relevant to the issue of summary judgment, the Court finds that summary judgment is premature at this time. *See* Fed. R. Civ. P. 56(d).

Even if the Court were to consider the Motion as to summary judgment, the present record reveals a genuine dispute of material fact which precludes summary judgment. In their written accounts, Rounds and Wolford assert that McCall was resisting while he was in the Medical Room and deny that they assaulted him. According to McCall, however, he was assaulted by Rounds and Wolford in the Medical Room while he was handcuffed and not resisting. McCall disputes that there was any need for force and maintains that Rounds and Wolford knew there was no need for the use of force but continued to assault him. His account is supported in part by the fact that, as Wilson determined during the IID investigation, the surveillance video does not show that McCall had visible facial injuries before he was brought into the Medical Room, but instead reveals that a mark on his face was visible only after he left that room. Although Wilson and Wolford theorize that McCall must have been injured when Wolford lost his grip on him as he was being moved into the Medical Room, that claim is by no means conclusive. Notably, neither Wilson's description of the surveillance video nor any of the written accounts by the correctional officers provided as part of the UOF or IID investigations states that McCall was actually dropped onto the ground as he was moved into the Medical Room. Moreover, McCall's documented injuries included not only a cut near his eye, but also bruises to his face and head and a broken nose, injuries which are not clearly explained by a momentary loss of grip during transport. Where there are conflicting accounts that require assessments of credibility, and there is no conclusive video evidence, the Court finds that there are genuine issues of material fact, including on how McCall sustained his injuries and when McCall stopped resisting the officers, which preclude summary judgment at this time.

## IV.  Qualified Immunity

Defendants alternatively assert that they are entitled to qualified immunity from McCall's Eighth Amendment claim based on excessive force. They assert that the Amended Complaint, taken as true, does not describe actions by Rounds and Wolford that violated a clearly established constitutional right of which a reasonable public official would have known.

Government officials sued in their individual capacity may invoke qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "Qualified immunity protects government officials from civil damages in a § 1983 action insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)). To overcome an assertion of qualified immunity from a § 1983 claim, a plaintiff must show that (1) the government official violated a federally protected right of the plaintiff; and (2) that right was clearly established at the time of the alleged misconduct, in that a "reasonable official would understand that what he is doing violates that right." *Id.* Because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the United States Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (citations omitted). If the Court determines that the government official took actions that a reasonable officer could have believed were lawful, then the official is entitled to dismissal before discovery. *Id.*

As discussed above, McCall has adequately alleged an Eighth Amendment claim against Rounds and Wolford based on his assertions that they used excessive force to punish him while he was handcuffed and not resisting. The right of a prisoner to be free from an assault or other

12


unnecessary use of force while restrained or not engaged in threatening conduct was clearly established before the events in question occurred in December 2020. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) (holding that the Eighth Amendment forbids the unnecessary and wanton infliction of pain on a prisoner); *Hudson*, 503 U.S. at 4, 9–10 (holding that correctional officers violated the Eighth Amendment when they beat an inmate while he was handcuffed and shackled, even though the injuries, which included bruises, swelling, and loosened teeth, were "minor" and did not require medical attention); *Wilkins*, 559 U.S. at 35, 38 (holding that a correctional officer violated the Eighth Amendment when he "maliciously and sadistically" punched, kicked, kneed, and choked the plaintiff without provocation, resulting in a bruised heel, lower back pain, increased blood pressure, headaches, and dizziness). Although the parties disagree on whether McCall was resisting and the force was necessary, such factual disputes preclude the application of qualified immunity at this time. *Anderson*, 477 U.S. at 252. The Court will therefore deny the Motion on the issue of qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment will be GRANTED IN PART and DENIED IN PART in that the Motion will be granted as to the claims against NBCI and denied as to the claims against Rounds and Wolford. Because McCall cannot reasonably conduct discovery without counsel, McCall's Third Motion for Appointment of Counsel will be GRANTED. A separate Order shall issue.

Date: March 7, 2023



THEODORE D. CHUANG
United States District Judge